**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| **LITEPANELS LTD.** <br> and <br> **VIDENDUM PRODUCTION SOLUTIONS, INC.** <br><br> Plaintiffs, <br><br> v. <br><br> **ZHISHENG "JACK" XU** <br> and <br> **JIAN CHENG TECHNOLOGY, INC.** <br> and <br> **HUIZHOU CITY LATU FILM EQUIPMENT CO. LTD** A/K/A **GVM LATU FILM EQUIPMENT CO. LTD.** <br> and <br> **GVM PHOTOGRAPHIC EQUIPMENT CO. INC.,** <br><br> Defendants. | **Civil Action No. 2:25-cv-06011** <br><br> **JURY TRIAL DEMANDED** |

---

## COMPLAINT

Plaintiffs, Litepanels Ltd. and Videndum Production Solutions Inc. ("Plaintiffs"), by and through their undersigned counsel, respectfully submit this Complaint against Defendants, as follows:

### INTRODUCTION

This action arises from the Defendants' efforts to evade their contractual obligations, perpetrate fraud against Plaintiffs, and circumvent a judgment by engaging in fraudulent transfers and ongoing corporate maneuvers. Through a series of deliberate actions, Defendants have sought to conceal significant business operations and millions of dollars in assets from creditors, all while continuing to conduct the same business under various shell entities within this District.

**PARTIES TO THIS ACTION**

1.    Plaintiff **Litepanels Ltd**. ("Litepanels") is a private limited company formed under the laws of England and Wales with its Registered Office located at William Vinten Building, Easlea Road, Bury St. Edmunds, Suffolk, England, IP32 7BY.

2.    Plaintiff **Videndum Production Solutions Inc**. ("Videndum") is a Delaware for-profit corporation with its principal place of business located at 14 Progress Drive, Shelton, Connecticut 06484.

3.    Defendant **Zhisheng "Jack" Xu** (a/k/a **Zhi Sheng Xu** and **ZhiSheng Xu**) ("Xu") is an adult individual and, on information and belief, a citizen of the Peoples Republic of China (PRC) holding PRC Passport No. EH███812.  Defendant Xu has represented, in numerous corporate filings, as (himself) having an address of 4301 N Delaware Ave., Building D in the City and County of Philadelphia, Pennsylvania 19137.  Defendant Xu, at the time of the filing of this Complaint, further identifies himself as the Chief Executive Officer of Defendant Jian Cheng Technology Inc., and who held (or holds) the identical positions with Defendant GVM Photographic Equipment Inc.  None the less, Defendant Xu's principal employer is Defendant Huizhou City LATU Film Equipment Co. Ltd where he holds, on information and belief, a senior management position.

4.    Defendant **GVM Photographic Equipment Co., Inc**. (hereafter "GVM Inc.")[1] is a California business corporation having its principal offices at 12285 McNulty Road, Bay 105 / 108, Philadelphia, PA 19154. Its prior address was 4301 N. Delaware Ave., Philadelphia, PA. Defendant GVM Inc. is a wholly-owned subsidiary of Defendant Huizhou City LATU Film Equipment Co. Ltd.

---

[1] GVM Inc. was formerly known as "Latour." *See* ¶ 17, *supra*.

5.      Defendant **Jian Cheng Technology Inc**. ("JCT Inc.") is a Pennsylvania business corporation having its principal offices at 12285 McNulty Road (either in Bay 108 or 105), Philadelphia, PA 19154.  Defendant JCT Inc. originally reported its address as 4301 N Delaware Ave., Philadelphia, PA, the same address as Defendant GVM Inc.   It is a wholly owned subsidiary of Defendant Huizhou City LATU Film Equipment Co. Ltd.

6.      Defendant **Huizhou City LATU Film Equipment Co. Ltd.**, which at times presents itself to the public in the United States as **GVM LATU Film Equipment Co., Ltd.** or also **Huizhou LATU Film Equipment Co. Ltd.** (hereafter collectively referred to as "LATU") and, on information and belief, is a business entity formed under the laws of the Peoples Republic of China and which has its principal place of business at No. 9, Tai'an Road, Ma'an Town, Huicheng District, Huizhou City, Guangdong Province, in the Peoples Republic of China.  LATU also presents itself as having a business address in the United States of America at 4301 N. Delaware Avenue, Building D, Philadelphia, PA.

<u>**JURISDICTION AND VENUE**</u>

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) and (3) because:

a.      There is complete diversity of citizenship between Plaintiffs and Defendants:

i.  Plaintiff Litepanels Ltd. is a United Kingdom private limited company with its principal place of business in Suffolk, England;

ii.  Plaintiff Videndum Production Solutions Inc. is a Delaware corporation with its principal place of business in Shelton, Connecticut;

iii.  Defendants Xu is a citizen of the People's Republic of China and who has claimed addresses within the Commonwealth of Pennsylvania at 4301 N. Delaware Ave., Philadelphia and 12285 McNulty Road, Bay 105, Philadelphia;

3

iv.  Defendant LATU is a Chinese corporation with its principal place of business in Guangdong Province in the Peoples Republic of China;

v.  Defendant JCT Inc. is a Pennsylvania corporation with its principal place of business at 12285 McNulty Road, Philadelphia, Pennsylvania;

vi.  Defendant GVM Inc. is a California corporation with its principal place of business at 12285 McNulty Road, Philadelphia, Pennsylvania.

b. The amount in controversy exceeds $75,000, exclusive of interest and costs, as evidenced by the underlying judgment of $2,757,341.60 and subsequent fraudulent transfers exceeding (at least) $4,415,793.43.

8.  This Court has personal jurisdiction over Defendants because:

a. The Individual Defendant Xu:

i.  Regularly conducts business within this District through his management, control and operation of JCT Inc. and GVM Inc.;

ii. Has executed contracts, including vendor agreements with B&H, from locations within this District;

iii. Has engaged in tortious conduct within this District by orchestrating fraudulent transfers and concealment of assets.

b. The Corporate Defendants:

i.  JCT Inc., GVM Inc., and LATU (collectively, the "Corporate Defendants") conduct regular and systematic business within this District;

ii.  All Corporate Defendants have engaged in tortious conduct within this District.

9.  Venue is proper as the claims presented in this Complaint relate to a judgment entered by this Court on July 22, 2024 in case 1:23-cv-3599 (KMW-MJS) (the "Prior Action") against an entity related to and controlled by each of the Defendants, Defendant GVM Inc.  That

4

judgment was in the amount of Two Million Seven Hundred Fifty-Seven Thousand, Three Hundred Forty-One Dollars and Sixty Cents ($2,757,341.60) ("Judgment").  (*See* **Exhibit 1**).

### FACTS COMMON TO ALL COUNTS

10. Litepanels and Videndum are wholly owned subsidiaries of Videndum plc, a public limited company based in the United Kingdom. Videndum plc owns several businesses engaged in designing, manufacturing, and distributing advanced hardware products and software solutions for the image capture and content creation industries. The customer base for Litepanels and Videndum includes broadcasters, production and rental companies, photographers, and independent creators.

11. Litepanels holds numerous patents covering lighting and illumination systems that employ light emitting diodes (LEDs) for use in film, television, and video production. These patented inventions transformed lighting technology in these fields by offering substantial operational advantages, such as reduced power consumption, dramatically extended lifespan compared to prior technologies, enhanced safety, simple color tuning for creative purposes, and lower manufacturing costs than competing lighting systems. Following the launch of its initial products, Litepanels was quickly confronted with widespread infringement, primarily by companies established in the People's Republic of China producing nearly identical lights, with little regard for Litepanels' patent protections and its entitlement to the commercial benefits of its innovations.

12. Faced with extensive infringement from predominantly foreign entities and seeking to safeguard its core business in the United States, Litepanels sought relief from the United States International Trade Commission ("ITC"). The ITC responded to Litepanels' petition by initiating Investigation No. 337-TA-804, titled "Certain LED Photographic Lighting Devices And Components Thereof." On January 17, 2013, the ITC determined that a General Exclusion Order

5

("GEO") should be issued to protect Litepanels' intellectual property rights. (*See* **Exhibit 2** – Notice of Commission's Final Determination, 337-TA-804, January 17, 2013).

13.     The GEO was enforced by the U.S. Customs and Border Protection Agency ("CBP"), which seized infringing products during importation unless the manufacturer or brand was licensed by Litepanels. By 2019, most significant manufacturers seeking to sell infringing lighting products in the United States had entered into license agreements with Litepanels.

14.     Defendant LATU is a manufacturer of photographic equipment in the People's Republic of China. Until approximately 2018, LATU operated as a contract manufacturer for various Chinese brands producing LED-based video lights. In 2018, LATU decided to enter the U.S. market directly with these products, despite knowing that such imports were prohibited without a license.

15.     LATU sought to enter the U.S. market through a self-owned distribution structure which, upon information and belief, was primarily intended to evade the license royalty payments that other manufacturers and brands were obligated, at that time, to pay.

16.     To facilitate the importation and sale of its products in the United States, LATU established a California business entity named LATOUR Photographic Equipment Inc. ("LATOUR"), with Defendant Xu acting as the incorporator. The name "LATOUR" serves as an anglicized version of "LATU." (*See* **Exhibit 3**).

17.     LATU and LATOUR (now known as GVM Inc.; *see* ¶18, *infra*) began importing and selling infringing lighting products in the United States in about 2018. These products were marketed under the brands "Great Video Maker" and "GVM," with LATOUR responsible for all U.S. distribution. LATU held all ownership interest in LATOUR and exercised direct control over its management, with Defendant Xu serving as president and overseeing its operations.

18.     In January 2019, LATOUR formally changed its name to "GVM Photographic Equipment Inc." Despite the change, the company remained fully owned and directed by LATU, and Defendant Xu continued as president. The amendment to the Articles of Incorporation was signed by Defendant Xu. (*See* **Exhibit 4**).

19.     On April 10, 2019, GVM Inc. entered into a Vendor Agreement with B&H Foto & Electronics, Inc. ("B&H") of New York, New York, the largest retailer of photographic equipment and accessories in the United States. GVM Inc.'s address at that time was identified as 338 N Canal Street, STE 20, South San Francisco, CA 94080. (*See* **Exhibit 5**).

20.     As a vendor, GVM Inc. utilized B&H's proprietary Electronic Data Interface ("EDI") system, which manages the offering and sale of products, order placement, order acknowledgment and acceptance, shipping instructions, tracking, and payment. Access to this system is restricted to authorized individuals, and it contains detailed product information, including SKU numbers and wholesale pricing.

21.     The April 10, 2019 Vendor Agreement between B&H and GVM Inc. remained effective until at least May 30, 2024, when B&H, at the request of Defendant JCT acting under LATU's direction, modified its purchasing arrangements for GVM-branded products, as further described *infra*.

22.     Under the Vendor Agreement, GVM Inc. designated itself as the "Manufacturer" of the products offered for resale to B&H, and conducted all sales to B&H as "GVM Inc." through the EDI system until at least June 1, 2024.

23.     From April 10, 2019, through at least May 30, 2024, all GVM-branded products sold to B&H were supplied by GVM Inc., generating more than $27,000,000 in revenue. This revenue benefited LATU, GVM Inc., JCT Inc., and Xu, with the majority derived from sales of

7

infringing products and their accessories—items that, without a license from Plaintiffs, would have been seized upon importation during the term of the GEO.

24.    From the outset of their involvement in the U.S. photographic lighting market in 2018, LATU, GVM Inc., and Xu were fully aware of Plaintiffs' patent rights and the GEO, yet intentionally disregarded them. Their strategy was to maximize profits by importing prohibited products without paying royalties and selling them unlicensed in the U.S. market. This allowed LATU and GVM Inc. to undercut competitors on price, achieving substantial market share in a short period.

25.    By late 2019, LATU and GVM Inc. were also selling infringing products online through Amazon. As their market presence grew, Plaintiffs requested CBP to seize GVM-branded shipments and asked Amazon to remove GVM Inc. products from its online store. Amazon complied and promptly removed the listings.[2]

26.    <u>Within twenty-four hours</u> of Amazon's removal of GVM-branded products, GVM Inc. contacted Plaintiffs to request a license. This outreach was made by "Ken" Tsai, GVM Inc.'s General Manager.

27.    GVM Inc. represented to Plaintiffs that it was a wholly owned subsidiary of LATU and served as the sole importer and distributor of all GVM-branded products in the United States.

28.    In early December 2019, representatives of Plaintiffs and GVM Inc., including Tsai, met at GVM Inc.'s South San Francisco facility. Following this meeting, the parties entered into a Patent License Agreement dated December 12, 2019, executed by Defendant Xu on behalf

---

[2] Shortly before 2019, Amazon implemented a policy allowing patent holders with a final court order finding infringement to request the removal of infringing products from its online marketplace. Once such products were removed, they could not be relisted on Amazon unless the patent owner provided consent or a subsequent court ruling determined the products were non-infringing.

of GVM Inc. (the "License"). The License provides that disputes shall be governed by New Jersey law.

29.    Upon execution of the License, Plaintiffs notified both Amazon and CBP that Defendants' products were now licensed, which enabled their return to Amazon's marketplace and ensured the products would not be subject to seizure by CBP under the GEO during importation.

30.    The License required GVM Inc. to report its sales and calculate royalties based, in part, on the "First Sale Price" of each product. Significantly, GVM Inc. failed to provide its initial semiannual written reports to Litepanels and Videndum in both July 2020 and February 2021. As a result, Litepanels and Videndum demanded compliance from GVM Inc. and, in the process, learned that GVM had relocated its operations to 4301 N. Delaware Ave., Building D, Philadelphia, PA. Tsai explained to Plaintiffs that this move was made to better serve GVM Inc.'s principal customer, B&H, whose warehouse and distribution centers are in Pennsauken and Florence, New Jersey.

31.    GVM Inc. finally supplied its initial "report" on sales and resulting royalties due Plaintiffs in March 2021.

32.    On August 3, 2021, Videndum and Litepanels notified GVM Inc. that they had reviewed the initial report and identified several significant discrepancies, particularly in the calculation of the "First Sale Price," which impacted the royalty owed under the License Agreement.

33.    Litepanels and Videndum insisted that GVM Inc. fulfill its contractual obligations and allow an audit of its records. Accommodating GVM Inc.'s request, meetings were held in September 2021 and May 2022 to discuss these matters. During those meetings, Plaintiffs raised concerns about GVM Inc.'s incorrect royalty calculations and discovered that nearly half of its product sales had not been reported at all. Plaintiffs made clear that, based on the limited data

provided, GVM Inc. owed at least $400,000 in royalties. Defendant Xu participated in the May meeting remotely, but no resolution was reached.

34. One month after the May 2022 meeting, on June 22, 2022, Defendant Xu—acting under LATU's direction and unbeknownst to Plaintiffs—incorporated Jian Cheng Technology Inc. ("JCT Inc."), using the same address as GVM Inc. (4301 N. Delaware Ave., Building D, Philadelphia, PA). (*See* **Exhibit 6**).

35. When Xu and LATU formed JCT Inc., they were fully aware of Plaintiffs' claim for at least $400,000 in unpaid royalties under the License, and that the true amount would be much higher once all sales were revealed.

36. For at least two years following its formation, JCT Inc. had no assets, employees, registrations, or actual business operations. It existed solely as a shell entity created by LATU and Xu in an effort to shield themselves from the claims of Plaintiffs under the License Agreement.

37. On August 15, 2022, Plaintiffs sent another letter to GVM Inc. detailing ongoing reporting deficiencies and calculated royalties based on GVM Inc.'s self-reported sales—which, as later determined, were grossly underreported—including $211,929.66 for 2020 and $200,226.00 for 2021, totaling $412,155.66.

38. In response to GVM Inc.'s request, Plaintiffs attended another meeting on August 24, 2022, but once again, no agreement was reached. Tsai was present in person, and Xu participated remotely.

39. On November 21, 2022, Plaintiffs issued an invoice to GVM Inc. for $412,155.66, based solely on GVM Inc.'s reported sales (which were later shown to be deliberately and materially inaccurate).

40. On January 18, 2023, Videndum's General Counsel met with B&H's General Counsel to discuss the ongoing dispute with GVM Inc., including concerns over inaccurate

10

reporting. B&H was advised that litigation was likely and would require discovery, and, on information and belief, this was communicated to relevant personnel at B&H.

41. On March 4 and March 21, 2023, Plaintiffs emailed GVM Inc.'s General Manager, Tsai, stating that litigation would proceed due to the delinquent account. In the March 21 email, Plaintiffs attached a draft Complaint to emphasize the seriousness of the matter.

42. Instead of resolving the outstanding account, and fully aware of the substantial royalty obligations, Defendant Xu—under LATU's direction—approached B&H in April 2023 to request recognition of a "new" Vendor, JCT Inc.

43. On May 15, 2023, Tsai, acting on behalf of LATU and JCT Inc., returned the executed Vendor Agreement for JCT Inc. to B&H, with Defendant Xu signing as the authorized representative.

44. Although LATU, JCT Inc., and Xu completed the paperwork to establish JCT Inc. as a Vendor with B&H by May 15, 2023, no substantive changes occurred: all GVM-branded products continued to be ordered by B&H from GVM Inc., and all sales and payments were still processed through GVM Inc. using B&H's EDI system.

45. On June 1, 2024, B&H was notified that litigation against GVM Inc. was imminent.

46. On July 5, 2023, Plaintiffs commenced the Prior Action by filing a Complaint against GVM Inc. in the United States District Court for the District of New Jersey, as mandated by the terms of the License (Case No. 1:23-cv-3599 (KMW-MJS)).

47. On July 27, 2023, GVM Inc. was served with the Complaint and Summons in the Prior Action.

48. Four days later, on July 31, 2023, Tsai emailed B&H to advise that payments were still being issued by B&H to GVM Inc. and to request that going forward, those payments should

11

be directed to JCT Inc. Defendant Xu and Jidi Chen, CFO of JCT Inc., were copied on the email (*see* **Exhibit 7**).

49.     As of July 31, 2023, despite Tsai's email, there was no change in the actual Vendor for GVM-branded products; all purchases by B&H continued to be processed, entered, and fulfilled by GVM Inc. There were no changes in the seller name (still GVM Inc. on all Purchase Orders), product identification (SKU codes), pricing, contacts, seller address, shipping terms, or any other business terms with B&H. Access and rights under B&H's EDI system also remained unchanged, and B&H did not redirect payments as requested.

50.     On August 16, 2023, less than three weeks after receiving Plaintiffs' Complaint in the Prior Action, JCT Inc.—acting through its President, Defendant Xu, and at the express direction of LATU—entered into a lease for a new warehouse located at 4301 N Delaware Ave., Philadelphia, PA, roughly 15 miles from the facility occupied by GVM Inc. This address had already been listed as JCT Inc.'s location in its Pennsylvania corporate filings. Both the GVM Inc. and JCT Inc. warehouses are, upon information and belief, managed by the same landlord.

51.     Despite being served and notified of the Complaint, GVM Inc. did not respond. On September 6, 2023, the Clerk entered default against GVM Inc. in the Prior Action.

52.     Six days later, on September 12, 2023, Defendant Xu, accompanied by LATU employees Jidi Chen and Wei Chen—acting on behalf of LATU and themselves—approached B&H and demanded that all future payments owed to GVM Inc. be redirected to a bank account in the name of JCT Inc. This request was made with the intent to hinder, delay, and defraud Plaintiffs' collection efforts. To further this scheme, Defendants Xu and JCT Inc. represented JCT Inc. as a GVM affiliated entity to B&H (*see* **Exhibit 8**).

53.     B&H acceded to this request, and payments for products purchased from GVM Inc. were thereafter sent to JCT Inc.'s bank account.

12

54.    Although payments for GVM-branded products were now being made to JCT Inc., all purchases by B&H continued to be directed to, entered, and fulfilled by GVM Inc. There were no changes to the seller name (still GVM Inc. on all Purchase Orders), SKU codes, pricing, seller contacts, seller address, shipping terms, or any other business terms with B&H. Access to B&H's EDI system also remained unchanged.

55.    Between September 12, 2023, and approximately January 1, 2025, B&H paid JCT Inc. roughly $4,415,793.43 for sales of GVM-branded products. Most of these payments related to sales orders originally placed with GVM Inc., and all products were delivered to B&H's warehouse facilities in New Jersey.

56.    On or about October 5, 2023, Plaintiffs served a discovery subpoena on B&H to obtain details of GVM's infringing sales for their Motion for Default in the Prior Action. The subpoena requested information and documents regarding the vendor relationship, sales, purchases, and communications between B&H and GVM Inc. B&H's response required input from key personnel in vendor control, legal, sales, finance, and purchasing (*see* **Exhibit 9**).

57.    On December 20, 2023, LATU employee Jidi Chen notified B&H that GVM Inc. had moved its warehouse to 12285 McNulty Road, Bay 105, Philadelphia, PA (*see* **Exhibit 10**).

58.    GVM Inc. continued to do business with B&H as "GVM Inc." at the McNulty Road location, with all sales based on Purchase Orders issued by B&H to GVM Inc.

59.    On April 9, 2024, B&H was notified that Plaintiffs would imminently file a Motion for Final Judgment against GVM Inc. in the Prior Action, and that execution would follow shortly thereafter.

60.    Plaintiffs filed their Motion for Final Judgment against GVM Inc. on May 14, 2024, and again provided notice to GVM Inc.

61. During preparation for the Motion for Final Judgment, Plaintiffs discovered through B&H's subpoenaed documentation that GVM Inc. had intentionally and materially misstated the First Sale Price of its products, failed to report sales for nearly half of its licensed products, and significantly underreported the sales of those products it did disclose. Based on B&H's evidentiary production, Plaintiffs sought entry of Final Judgment for approximately $2,797,000.

62. Within days of receiving notice of the Motion for Final Judgment, Defendant Xu, acting on behalf of himself, LATU, and JCT Inc., and with the specific intent to hinder, delay, and defraud Plaintiffs, approached B&H to demand that the "Vendor" for all GVM-branded products be immediately changed from GVM Inc. to JCT Inc. Prior to this demand, all B&H sales of "GVM" products were placed with and fulfilled by GVM Inc.

63. On May 30, 2024—just sixteen days after Plaintiffs filed their Motion for Final Judgment—B&H agreed to change the "Vendor" for all GVM-branded products from GVM Inc. to JCT Inc. Defendant Xu participated in meetings with B&H, representing LATU, JCT Inc., and himself, with the sole intent to defraud Plaintiffs and evade GVM Inc.'s contractual obligations. Xu signed the new Vendor Agreement with B&H on behalf of JCT Inc. (*see* **Exhibit 11**).

64. Upon information and belief, no consideration was exchanged between LATU, GVM Inc. or JCT Inc. for this "transfer" of business, nor was there any legitimate business purpose. Any Vendor change in B&H's system was part of a deliberate scheme by Defendants to obstruct, delay, and defraud Plaintiffs in collecting a valid judgment that Defendants knew would be entered imminently.

65. Even after B&H changed the Vendor to JCT Inc. and began issuing Purchase Orders to JCT Inc., no other aspects of the business relationship changed: product SKUs, pricing, seller contacts, addresses, shipping terms, and EDI access remained the same. LATU products

14

with the GVM trademark continued to be imported by LATU's sole U.S. distributor—now labeled JCT Inc. instead of GVM Inc., but only in name. Notably, after the Vendor change, Bills of Lading issued by JCT Inc. continued to list GVM Inc. as the shipper for all B&H purchases, and this practice persisted until after Plaintiffs executed a levy.

66. On July 22, 2024, the United States District Court for the District of New Jersey entered Final Judgment against GVM Inc. for $2,757,341.60, permanently enjoining GVM Inc. from importing, marketing, selling, or leasing any products covered by the licensed patents, or facilitating their export to the United States.

67. Since the start of its U.S. operations, GVM Inc. and LATU promoted their business and products via www.gvmled.com, listing all GVM Inc. locations, including 338 N Canal Street, South San Francisco, CA; 4301 N. Delaware Avenue, Philadelphia, PA; and 12285 McNulty Road, Philadelphia, PA. JCT Inc. also claims to have occupied these same Pennsylvania locations. *See e.g.,* Exhibit 6.

68. On September 19, 2024, the Clerk of the United States District Court for the Eastern District of Pennsylvania registered the Judgment. On October 30, 2024, the U.S. Marshal personally served a Writ of Execution on that Judgment at 12285 McNulty Road, Bay 105, Philadelphia, PA.

69. Upon service of the Writ, individuals present at 12285 McNulty Road, Bay 105 identified themselves as employees of GVM Inc. The Marshal explained the Writ and conducted a levy and inventory of GVM-branded products, and the employees confirmed their understanding of the requirements of the levy.

70. Upon information and belief, and as part of a continued effort to hinder, delay, and defraud Plaintiffs, Defendant Xu—acting both individually and as an agent for LATU, JCT Inc.,

15

and GVM Inc.—immediately contacted the landlord of 12285 McNulty Road to secure access to an alternative shipping bay within the same building, specifically Bay 108, just a few units away.

71.    Subsequently, JCT Inc. began claiming to operate from Bay 108, and the majority of Bills of Lading for shipments to B&H after the levy reflected Bay 108 as the shipping address. However, incoming shipments from LATU continued to be delivered to Bay 105. Notably, Bay 108 had previously been vacant and available for lease, and as of February 7, 2025—over three months after this purported change—it was still being offered for lease by the landlord.

72.    Upon information and belief, neither GVM Inc. nor JCT Inc. ever maintained adequate capitalization to support their purported business operations. Instead, both entities relied solely on the continuous flow of funds from sales to B&H and other customers to remain operational, lacking sufficient working capital to meet ordinary business obligations.

73.    Upon information and belief, neither GVM Inc. nor JCT Inc. adhered to fundamental corporate formalities, including:

   a. Failing to conduct regular board meetings or maintain proper corporate minutes;

   b. Commingling corporate funds with the personal funds of the Defendant Xu;

   c. Using corporate assets for personal purposes without proper documentation or reimbursement;

   d. Lacking documentation for the supposed transfer of business operations from GVM Inc. to JCT Inc.;

   e. Not maintaining separate books and records for each entity.

74.    Upon information and belief, the Defendant Xu exercised complete dominion and control over both GVM Inc. and JCT Inc., treating them as mere alter egos for his personal dealings rather than as truly independent corporate entities. This is evidenced by:

   a. The use of identical business operations, contacts, and facilities;

16

b. The seamless continuation of business relationships, particularly with B&H;

c. The strategically timed corporate changes intended to evade liability;

d. The absence of consideration for the purported transfer of business operations.

75. The coordinated scheme to evade judgment is further demonstrated by communications among the Defendants, including:

a. The May 2022 conference call in which Defendant Xu participated, during which Plaintiffs explained issues with royalty calculations;

b. The formation of JCT Inc. within a month following that call;

c. Coordinated efforts to persuade B&H to redirect payments and transfer vendor status;

d. The ongoing presentation of all entities as part of the "GVM" business enterprise.

76. At all relevant times, upon information and belief, Defendants LATU and Xu used their controlled corporate entities, including GVM Inc. and JCT Inc., to orchestrate a scheme to defraud their legitimate creditors, with Plaintiffs being the primary target.

77. Upon information and belief, this fraudulent scheme originated in 2018, when Defendants recognized that, due to enforcement of the GEO by CBP, they could not lawfully access the U.S. market for their LED photographic products without addressing Plaintiffs' patent rights. Once their attempt to bypass Plaintiffs' rights was discovered, Defendants obtained a license—never intending to comply with its terms—thereby circumventing the GEO's restrictions.

78. After securing the license, Defendants failed to provide required sales reports, and when reports were submitted, they contained fundamental errors that intentionally understated royalties owed. When Plaintiffs pointed out these deficiencies and the limited scope of reported sales, Defendants LATU and Xu established JCT Inc. as a replacement entity for GVM Inc.

17

79. Upon information and belief, JCT Inc. has always existed as a "shell" entity, created by LATU and Xu to disguise the continued U.S. operations that began with GVM Inc., and to facilitate Xu's personal enrichment. The business operations of GVM Inc. were transferred to JCT Inc. without consideration and solely to evade obligations to Plaintiffs.

80. Piercing the corporate veil is warranted in this case because, upon information and belief:

a. Neither GVM Inc. nor JCT Inc. were properly capitalized and both operated merely as shell entities used by LATU and Xu to shield themselves from creditor liability.

b. Neither entity observed required corporate formalities.

c. Assets and payments intended for GVM Inc. were commingled or diverted to JCT Inc. among the Defendants.

81. There is, and has been, complete unity of ownership between GVM Inc. and JCT Inc., as both are wholly owned by Defendant LATU.

82. Management and control of JCT Inc. and GVM Inc. have always been identical throughout the existence of each entity.

83. Defendant LATU is attempting to exploit Pennsylvania's corporate laws to perpetrate a fraud upon Plaintiffs by orchestrating a corporate shell game—shifting assets and operations between various locations and business entities—to evade responsibility for its debts. Accordingly, LATU should be held subject to enterprise liability.

## COUNT ONE
### Uniform Voidable Transfer Act – N.J.S.A. § 25:2-25, *et seq.*

84. The averments set forth in paragraphs one through eighty-three (1 - 83) are incorporated herein as though fully set forth at length.

18

85.    At all times relevant, and particularly since Plaintiffs' filing of the Complaint, Request for Default, and Motion for Final Judgment in the Prior Action, the liability of GVM Inc. has been clear and Plaintiffs were and are "present and future creditor(s)" within the meaning of N.J.S.A. § 25:2-25, *et seq*., and more particularly, N.J.S.A. § 25:2-25 (a).

86.    The alleged "transfer" of business from judgment debtor/defendant GVM Inc. to JCT Inc. was done with the "actual intent to hinder, delay or defraud" a creditor, namely, the Plaintiffs herein, and, pursuant to N.J.S.A. § 25:2-25 (a)(1), is voidable.  While the actual intent to defraud is abjectly obvious, the following facts (supporting factors in determining said intent) exist here:

a.   The purported transfer was made to an "insider", a commonly owned, commonly managed, and co-located entity.

b.   The judgment debtor, GVM Inc., continued to maintain control of the business and its assets.

c.   The purported transfer of business operations was hidden and, except to B&H, no announcements were made on the common website or otherwise.

d.   The judgment debtor and each of the other named Defendants, at the time of the alleged transfer, were fully aware of Plaintiffs' claims described in the then-pending lawsuit and, in particular, in the then-pending request for judgment in the amount of (*circa*) Two Million Seven Hundred Ninety-Seven Thousand Dollars.

e.   The purported transfer was of the entirety of the judgment debtor's assets.

f.   Defendants GVM Inc. and JCT Inc. have, since being served with the Writ of Execution, attempted to hide assets by directing payments due to GVM Inc. to JCT Inc., and moved business operations to a bay in the same building, hiding assets in that location.

g.  GVM Inc. received no consideration for its replacement by JCT Inc. as the sole source of GVM branded products to B&H.

h.  The diversion of payments to GVM Inc. for its sales to B&H came at JCT Inc.'s request less than six (6) days after GVM Inc. received notice that a default was imminent, and GVM Inc.'s demand to B&H to change its identification as Vendor for all GVM branded products to JCT Inc. occurred only a few weeks after GVM Inc. (and the remainder of the Defendants) received notice of the filing of the Plaintiffs' Motion for Final Judgment.

87.  The actions of the Defendants are so incredibly wanton, willful, intentional and outrageous as to more than justify the imposition and assessment of punitive damages against each of the Defendants, jointly and severally, in an amount not to exceed five (5) times the judgment entered in the Prior Action pursuant to and in accordance with N.J.S.A. § 2A:15-5.14 (6.b).

**COUNT TWO**
**Pennsylvania Uniform Voidable Transactions Act – 12 Pa.C.S.A. § 5104, *et seq.***

88.  The averments set forth in paragraphs one through eighty-three (1 - 87) are incorporated herein as though fully set forth at length.

89.  At all times relevant, and particularly since Plaintiffs' filing of the Complaint, Request for Default, and Motion for Final Judgment in the Prior Action, the liability of GVM Inc. has been clear and Plaintiffs were and are "present and future creditor(s)" within the meaning of 12 Pa.C.S.A. § 5104, *et seq*., and more particularly, § 5104(a)(1).

90.  The "transfer" of business from judgment debtor/defendant GVM Inc. to JCT Inc. was done with the "actual intent to hinder, delay or defraud" a creditor, namely, the Plaintiffs herein, and, pursuant to 12 Pa.C.S.A. § 5104(a)(1), is voidable.  While the actual intent to defraud is abjectly obvious, the following facts (supporting factors in determining said intent) exist here:

20

a.  The purported transfer was made to an "insider", a commonly owned, commonly managed, and co-located entity.

b.  The judgment debtor, GVM Inc., continued to maintain control of the business and its assets.

c.  The purported transfer of business operations was hidden and, except to B&H, no announcements were made on the common website or otherwise.

d.  The judgment debtor and each of the other named Defendants, at the time of the alleged transfer, were fully aware of Plaintiffs' claims described in the then-pending lawsuit and, in particular, in the then-pending request for judgment in the amount of (*circa*) Two Million Seven Hundred Ninety-Seven Thousand Dollars.

e.  The purported transfer was of the entirety of the judgment debtor's assets.

f.  Defendants GVM Inc. and JCT Inc. have, since being served with the Writ of Execution, attempted to hide assets by directing payments due to GVM Inc. to JCT Inc., and moved business operations to a bay in the same building, hiding assets in that location.

g.  GVM Inc. received no consideration for its replacement by JCT Inc. as the sole source of GVM branded products to B&H.

h.  The diversion of payments to GVM Inc. for its sales to B&H came at JCT Inc.'s request less than six (6) days after GVM Inc. received notice that a default was imminent, and GVM Inc.'s demand to B&H to change its identification as Vendor for all GVM branded products to JCT Inc. occurred only a few weeks after GVM Inc. (and the remainder of the Defendants) received notice of the filing of the Plaintiffs' Motion for Final Judgment.

21

## COUNT THREE
### Common Law Conversion

91.    The averments set forth in paragraphs one through eighty-six (1 - 90) are incorporated herein as though fully set forth at length.

92.    Each of Defendants LATU, Xu, GVM Inc., and JCT Inc., and B&H, individually and in concert, wrongfully exercised dominion and control over funds rightfully belonging to GVM Inc., which, but for Defendants' misconduct, would have been available to satisfy the Judgment, including by:

   a.  Defendants LATU, Xu, GVM Inc., and JCT Inc., directing B&H to redirect payments for GVM Inc.'s sales of GVM branded products to JCT Inc.;

   b.  Agreeing, in the case of B&H, to divert said payments;

   c.  Defendants LATU, Xu, GVM Inc., and JCT Inc., converting GVM Inc.'s business relationships and goodwill to JCT Inc. without consideration;

   d.  Agreeing, in the case of B&H, to the conversion when it fully understood the improper purposes of same;

   e.  Defendants LATU, Xu, GVM Inc., JCT Inc., transferring, or causing the transfer of, inventory and other assets to avoid execution of the Judgment.

93.    These actions were taken with the specific intent to deprive Plaintiffs of their right to execute on the Judgment.

94.    As a direct result of these actions, Plaintiffs have been damaged in an amount to be proven at trial, but not less than $4,415,793.43.

## COUNT FOUR
### Common Law Fraud

95.    The averments set forth in paragraphs one through ninety (1 - 94) are incorporated herein as though fully set forth at length.

22

96.    In conceiving, agreeing and executing the scheme described above in this Complaint, including material misrepresentations by each of the Defendants of facts known to be false when made.  Defendants specifically intended that Plaintiffs rely on the misrepresented facts, and Plaintiffs reasonably relied on Defendants' representations.

97.    Defendants further misrepresented facts with the specific intent to hinder, delay and defraud Plaintiffs in the collection of their contract-based claims.

98.    Defendants' material misrepresentations resulted in damages to the Plaintiffs.

99.    Further, Defendants each wrongfully combined and conspired (at least amongst themselves, and possibly others not presently known to the Plaintiffs) to agree to hinder, prevent and defraud Plaintiffs from exercising and protecting their legitimate rights and to collect those monies which Defendants knew were due, to inflict a wrong against, and harm, Plaintiffs, as well as to gain wrongful financial benefit for each of the Defendants.

100.    The actions of the Defendants are so incredibly wanton, willful, intentional and outrageous as to more than justify the imposition and assessment of punitive damages against each of the Defendants, jointly and severally, in an amount not to exceed five (5) times the judgment entered in the Prior Action.

**WHEREFORE**, Plaintiffs LITEPANELS LTD. and VIDENDUM PRODUCTION SOLUTIONS INC. demand judgment against Defendants, as follows:

A.    Declaring that the corporate veil of the various LATU and Xu owned, managed and directed entities to wit: GVM Inc. and JCT Inc. are pierced, and that, for this matter, all corporate forms are to be disregarded and LATU and Xu each be held jointly and severally liable hereunder, including for all amounts found due at trial including costs, counsel fees and such other, further relief as the Court deems just.

B.       Awarding Plaintiffs relief pursuant to the New Jersey Uniform Voidable Transfers Act (§25:2-25, et seq.) and in particular N.J.S.A. §25:2-25, and (or in the alternative) the Pennsylvania Uniform Voidable Transactions Act (§1504, *et seq.*) and in particular 12 Pa.C.S.A. § 5104(a)(1), and for Common Law Conversion and Common Law Fraud, including:

i.       Ordering the transfer of GVM Inc.'s business, rights, interests, and liabilities to JCT Inc. void and invalid to the extent necessary to satisfy Plaintiffs' claims, including any exemplary damages;

ii.       Entering a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a):

   a.       Freezing all assets of the Defendants;

   b.       Prohibiting further transfers of property or assets;

   c.       Requiring preservation of all business records;

   d.       Imposing a constructive trust on Defendants' assets to the extent necessary to satisfy Plaintiffs' claims, including appointing a receiver to take charge of any assets transferred and Levy Execution on the assets of Defendants as having been fraudulently transferred, or their proceeds.

iii.       Awarding punitive damages against the Defendants and in favor of the Plaintiffs in an amount determined to be appropriate by the Jury, up to five (5) times the amount of the underlying claim of Plaintiffs pursuant to and in accordance with N.J.S.A. § 2A:15-5.14 (6.b);

iv.       Awarding prejudgment interest as permitted by law;

v.       Granting such other relief as this Court deems just and proper.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Litepanels Ltd. and Videndum Production Solutions, Inc. respectfully request that the Court order a trial on the merits by jury on

24

all issues so triable by right.  Plaintiffs have deposited the jury fee with the clerk of this Court and

have, in all respects, complied with Rule 38 of the Federal Rules of Civil Procedure.

Dated: October 21, 2025

Respectfully submitted,

By: */s/ Robert M. Abernethy, III*
Robert M. Abernethy III, Esq.
Attorney I.D. No. 326776
**BRUTSCHER,   FOLEY,   MILLINER,
LAND & KELLY, LLP**
213 E. State Street
Kennett Square, PA 19348
(610) 444-4848
robert@bfmlk.com

David Magee, Esq. (*pro hac vice application
forthcoming*)
Karl Fisher, Esq. (*pro hac vice application
forthcoming*)
**GREENBERG TRAURIG, LLP**
One International Place, Suite 2000
Boston, MA 02110
Tel: (617) 310-6000
Fax: (617) 310-6001
David.Magee@gtlaw.com
Karl.Fisher@gtlaw.com

*Attorneys for Plaintiffs, Litepanels Ltd. and
Videndum Production Solutions, Inc.*

25